**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: BOSTON UNIVERSITY COVID-19 REFUND LITIGATION | MASTER FILE NO. 1:20-cv-10827-RGS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Authorities...................................................................................... ii

Glossary Of Abbreviations...................................................................... vii

I.  Introduction.............................................................................................1

II. Factual Background ................................................................................4

III. Legal Standard ......................................................................................6

IV. Argument ...............................................................................................8

    A. Plaintiffs and BU Entered Valid Contracts for the Spring 2020
       Semester for In-Person Instruction and Access to Campus Facilities
       and Services. ...................................................................................8

       1.  Plaintiffs accepted BU's offer for in-person courses and campus
          access for the Spring 2020 semester.......................................10

       2.  BU created a reasonable expectation that Plaintiffs would receive
          in-person instruction and campus access for the full Spring 2020
          semester. ................................................................................13

    B. Plaintiffs Performed by Paying Tuition and Fees for the Spring 2020
       Semester.........................................................................................18

    C. BU Breached Its Contract with Plaintiffs. ......................................18

    D. BU Cannot Refuse Refunds Based on the Defense of Impracticability........19

    E. Plaintiffs Were Damaged When They Did Not Receive the In-Person
       Instruction and Campus Access for Which They Contracted.......................21

V. Conclusion .........................................................................................25

[PUBLIC VERSION - REDACTED]

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ameritas Life Ins. Corp. v. Brown*,
No. 09-cv-11070, 2010 WL 3895490 (D. Mass. Sept. 29, 2010)................................................. 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................... 7

*Arno v. Arbella Mut. Ins. Co.*,
No. 03-cv-1301, 2005 WL 2739905 (Mass. Super. Aug. 26, 2005)......................................... 22

*Bleiler v. Coll. of Holy Cross*,
No. 11-cv-11541, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) ........................................ 1, 9

*Bose Corp. v. Ejaz*,
732 F.3d 17 (1st Cir. 2013)........................................................................................................ 8

*Chong v. Ne. Univ.*,
No. 20-cv-10844, 2021 WL 1857341 (D. Mass. May 10, 2021).............................................. 17

*Cleveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (1999)................................................................................................................... 7

*Colantuoni v. Alfred Calcagni & Sons*,
44 F.3d 1 (1st Cir. 1994)............................................................................................................ 7

*Connecticut Nat'l Bank v. Trans World Airlines, Inc.*,
762 F. Supp. 76 (S.D.N.Y. 1991) ............................................................................................ 17

*Dismukes v. Brandeis Univ.*,
No. 19-cv-11049, 2021 WL 1518828 (D. Mass. Apr. 16, 2021).............................................. 9

*DMP v. Fay School ex rel. Bd. of Trustees*,
933 F. Supp. 2d 214 (D. Mass. 2013) ..................................................................................... 10

*Doe v. Harvard Univ.*,
462 F. Supp. 3d 51 (D. Mass. 2020) ........................................................................................ 19

*Doe v. Trs. of Bos. Coll.*,
892 F.3d 67 (1st Cir. 2018)........................................................................................................ 8

*DSSDR, LLC v. Zenith Infotech, Ltd.*,
No. 13-cv-10026, 2013 WL 6489944 (D. Mass. Dec. 9, 2013).............................................. 25

iii

[PUBLIC VERSION - REDACTED]

*Durbeck v. Suffolk Univ.*,
   547 F. Supp. 3d 133 (D. Mass. June 23, 2021) ....................................................... 10

*Facto v. Pantagis*,
   915 A.2d 59 (N.J. Super. App. Div. 2007) ............................................................... 21

*Flaherty v. Entergy Nuclear Operations, Inc.*,
   946 F.3d 41 (1st Cir. 2019) ....................................................................................... 7

*Ford Motor Co. v. Ghreiwati Auto*,
   945 F. Supp. 2d 851 (E.D. Mich. 2013) .................................................................. 21

*Garfield v. Gorilla, Inc.*,
   No. 13-cv-12810, 2015 WL 4028198 (D. Mass. July 1, 2015) ................................. 6

*Gaviria v. Lincoln Ed. Services Corp.*,
   No. 20-18552 (KM) (JBC), 2021 WL 2886086 (D.N.J. July 8, 2021) ............... 17, 21

*GE Cap. Healthcare Fin. Servs. v. Fall River Walk-In Emergency Med. Off., P.C.*,
   No. 02-cv-11789, 2004 WL 40522 (D. Mass. Jan. 7, 2004) ..................................... 6

*Greg Constr. Co. v. Mitchell Buick Sales, Inc.*,
   No. 177632, 1996 WL 33359281 (Mich. Ct. App. Sept. 10, 1996) ......................... 21

*Guckenberger v. Bos. Univ.*,
   974 F. Supp. 106 (D. Mass. 1997) .......................................................................... 10

*Hannibal-Fisher v. Grand Canyon Univ.*,
   523 F. Supp. 3d 1087 (D. Ariz. 2021) ..................................................................... 21

*Havlik v. Johnson & Wales Univ.*,
   509 F.3d 25 (1st Cir. 2007) ....................................................................................... 9

*Importers Ctr., Inc. v. Newell Cos., Inc.*,
   758 F.2d 17 (1st Cir. 1985) ..................................................................................... 20

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
   94 F. Supp. 2d 77 (D. Mass. 1999) ......................................................................... 20

*Knott v. Racicot*,
   812 N.E. 2d 1207 (Mass. 2004) .............................................................................. 20

*Mandarini v. Accurate Engineered Concrete, Inc.*,
   No. 17-cv-11123, 2019 WL 7371942 (D. Mass. Dec. 31, 2019) ............................... 7

*Mangla v. Brown Univ.*,
   135 F.3d. 80 (1st Cir. 1980) ............................................................................... 10, 11

[PUBLIC VERSION - REDACTED]

*Massachusetts Inst. of Tech. v. Guzman*,
   90 Mass. App. Ct. 1102, 56 N.E.3d 894 (2016) ................................................... 16

*Morris v. Brandeis Univ.*,
   No. CA002161, 2001 WL 1470357 (Mass. Super. Sept. 4, 2001) ........................... 9

*Omori v. Brandeis Univ.*,
   533 F. Supp. 3d 49 (D. Mass. 2021) ........................................................... 10, 11, 13

*Pena v. Honeywell Int'l, Inc.*,
   923 F.3d 18 (1st Cir. 2019) ....................................................................................... 7

*Pina v. Children's Place*,
   740 F.3d 785 (1st Cir. 2014) ..................................................................................... 6

*Rae v. Air-Speed, Inc.*,
   435 N.E.2d 628 (1982) ............................................................................................ 20

*Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*,
   425 F. Supp. 3d 57 (D. Mass. 2019) .................................................................. 8, 25

*S. Shore Hellenic Church v. Artech Church Interiors, Inc.*,
   183 F. Supp. 3d 197 (D. Mass. 2016) ....................................................................... 9

*Sanchez v. Alvarado*,
   101 F.3d 223 (1st Cir. 1996) ..................................................................................... 6

*Sea Breeze Ests., LLC v. Jarema*,
   113 N.E.3d 355 (Mass. App. Ct. 2018) .................................................................... 9

*T.K. through G.K. v. Town of Barnstable*,
   No. 17-CV-11781-DJC, 2020 WL 3183164 (D. Mass. June 15, 2020) .................... 7

*Torres v. E.I. Dupont de Nemours & Co.*,
   219 F.3d 13 (1st Cir. 2000) ....................................................................................... 7

*Vander Luitgaren v. Sun Life Assur. Co. of Canada*,
   966 F. Supp. 2d 59 (D. Mass. 2012) ......................................................................... 4

*Vasconcellos v. Arbella Mut. Ins. Co.*,
   853 N.E.2d 571 (Mass. App. Ct. 2006) .................................................................... 8

*W. Sur. Co. v. MCMUSA, LLC*,
   No. 13-cv-10828, 2014 WL 12644257 (D. Mass. Aug. 29, 2014) .......................... 25

*Walker v. President & Fellows of Harvard Coll.*,
   840 F.3d 57 (1st Cir. 2016) ......................................................................... 9, 19, 20

*Walsh v. Town of Lakeville*,
   431 F. Supp. 2d 134 (D. Mass. 2006) ......................................................................... 8

*Waste Stream Environmental, Inc., v. Lynn Water and Sewer Commission*,
   15 Mass. L. Rptr. 723 (Mass. Super. Ct. 2003) ......................................................... 21

*Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*,
   No. 20-cv-80, 2020 WL 4012095 (W.D. Pa. July 14, 2020) ...................................... 4

### Rules

Fed. R. Civ. P. 36(b) ....................................................................................................... 11

Fed. R. Civ. P. 56(a) .................................................................................................... 6, 26

### Other Authorities

Local Rules of the U.S. District Court for the D. Mass. 7 ............................................... 4

Restatement (Second) of Contracts § 87(1) ................................................................... 20

Restatement (Second) of Contracts § 272 ............................................................ 3, 20, 21

Restatement (Second) of Contracts § 302 ..................................................................... 20

[PUBLIC VERSION - REDACTED]

## GLOSSARY OF ABBREVIATIONS

For the convenience of the Court and efficiency, Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, as well as their concurrently filed Local Rule 56.1 Statement of Facts in support thereof, use the following abbreviations

| Deposition | Abbreviation | Exhibit |
|---|---|---|
| Deposition of Christine Paal (May 13, 2022) | Paal Dep. | 17 |
| Deposition of Robert A. Brown (May 6, 2022) | Brown Dep. | 1 |
| Rule 30(b)(6) Deposition of Gary W. Nicksa (May 2, 2022) | Nicksa 30(b)(6) Dep. | 2 |
| Rule 30(b)(6) Deposition of Jean Morrison (May 5, 2022) | Morrison 30(b)(6) Dep. | 3 |
| **Individuals** | **Abbreviation** | **Organization/Title** |
| Christine Paal | Paal | BU's Assistant Vice President of Enrollment and Student Administration and University Registrar |
| Robert A. Brown | Brown | BU's President |
| Gary W. Nicksa | Nicksa | BU's Senior Vice President for Financial Affairs, Treasurer and Chief Financial Officer |
| Jean Morrison | Morrison | BU's Provost and Chief Academic Officer Jean Morrison |
| **Other Items** | **Abbreviation** | **Exhibit** |
| BU June 4, 2021 Responses to Plaintiffs' Requests for Admission | RPRFA | 5 |
| BU Responses to Plaintiffs' Interrogatories | RPI | 4 |
| Plaintiffs Natalie Silulu and Valaauina Silulus's Objections and Responses to BU's Requests for Admission | SRDRFA | 16 |
| **Other Terms** | **Abbreviation** | |
| BU 2019-2020 Student Bulletin | Bulletin | |

[PUBLIC VERSION - REDACTED]

| | | |
|---|---|---|
| Defendant Trustees of Boston University | Defendant or BU | |
| Plaintiffs' Motion for Summary Judgment | Motion | |
| Plaintiffs Julia Dutra, Gabriella Dube, Shakura Cox, Natalie Silulu, Olivia Bornstein, and Valaauina Silulu | Plaintiffs | |
| Plaintiffs' Local Rule 56.1 Statement of Facts | SOF | |
| Plaintiffs Julia Dutra, Gabriella Dube, Shakura Cox, Natalie Silulu, and Olivia Bornstein | Student Plaintiffs | |

[PUBLIC VERSION - REDACTED]

## I.    __INTRODUCTION__

Plaintiffs, students at Boston University and a parent who has agreed to reimburse his daughter (Plaintiff Natalie Silulu) for her tuition and fees, respectfully submit this Motion for Summary Judgment as to their contract claims (Counts I and II of the Consolidated Amended Complaint, ECF No. 49).

In denying Defendant's motion to dismiss these claims, this Court noted that, "[w]hen interpreting contracts between students and their academic institutions under Massachusetts law courts employ a standard of reasonable expectation – what meaning the party making the manifestation, the university, should reasonably expect the other party [the students] to give it." ECF No. 63 at 7 (quoting *Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *15 (D. Mass. Aug. 26, 2013)). The Court then determined that it "need[ed] the benefit of further factual development of the contractual claims to resolve the issue on the merits." *Id.*

In discovery, BU admitted to facts sufficient to meet Plaintiffs' burden on this point and the other elements of Plaintiffs' contract claims. Indeed, BU's Rule 30(b)(6) designee, Provost and Chief Academic Officer Jean Morrison, admitted that ██████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ SOF ¶ 33. BU admitted further that, ████████████████████████████████ ████████████████████████████████████████████████████████ ██████ BU and students (including the Student Plaintiffs) reinforced this mutual understanding that courses designated as meeting in person in BU's registration system would be delivered in person (and not online) by BU charging (and its students paying) different tuition amounts and mandatory fees; where the student registered for courses designated for in-person instruction,

1

they would pay larger amounts compared to if the student registered for courses provided through online delivery. *Id.* ¶¶ 9-15, 30-32, 47-49. And BU's (and students') past practice of delivering (attending) in-person courses in person, *id.* ¶¶ 39-40, 46 (along with many such courses having an in-person attendance requirement, *id.* ¶ 34), provides further support to the parties' meeting of the minds as to how BU would deliver its instruction for courses designating a physical meeting place in the registration system.

BU's charging differential tuition and fees for in-person versus online courses, BU's descriptions of the fees themselves (which referenced services that would be provided on campus), and BU's descriptions of the physical locations where courses would be taught constituted an *offer* to students whereby BU offered to provide in-person instruction and access to campus facilities and resources in exchange for the payment of tuition and fees. When students registered for such courses and paid BU's demanded tuition and fees, as the Student Plaintiffs did, the students *accepted* BU's offer. The critical term of this contract for purposes of this suit is the parties' agreement that BU would provide in-person instruction and access to campus facilities and resources.

Through its admissions and other evidence, BU cannot reasonably dispute that BU and its students entered into a contract pursuant to which students who registered and paid for in-person courses and access to campus facilities and resources had a reasonable expectation (which BU intentionally created) that BU would provide such in-person instruction and access to campus facilities and resources for the full Spring 2020 semester. By failing to provide in-person education, BU breached this contract as a matter of law.

There is no reasonable dispute that Plaintiffs have been damaged by BU's breach of contract, or as to the amount of such damages. As this Court has ruled, "Plaintiffs have already

[PUBLIC VERSION - REDACTED]

identified how BU valued the receipt of online credits in comparison to in-person credits, so determining the amount of any award will be as simple as calculating the difference between the two values and pro-rating the difference to account for the portion of the semester each plaintiff spent on campus prior to the campus shutting down." ECF No. 72. The evidence demonstrates no reasonable dispute that BU charged more tuition and mandatory fees to students who registered for in-person courses. Thus, Plaintiffs establish damages through undisputed facts. In following the Court's ruling on the method of calculating damages, Plaintiffs' damages calculations are straightforward and supported by the record.

BU further lacks any cognizable affirmative defense to Plaintiffs' contract claims. BU cannot reasonably contend that its contracts with Plaintiffs allow it to refuse to refund any tuition or fees if BU became unable to perform its contractual obligation to provide in-person instruction and/or access to its campus because BU *admits* that it (1) did not communicate to students that it would refuse refunds in such circumstances and (2) did nothing to create a reasonable expectation among students that refunds would not be provided if BU could not perform these obligations. As BU's Provost put it: ███████████████████████████████

███████████████████████████████████████████

███████████████████            SOF ¶ 41.

BU appears poised to request that the Court declare its performance—*i.e.*, its obligation to provide in-person courses and campus access—impracticable, excusing BU from its breach. Even if BU can meet the elements of that affirmative defense, BU is not entitled to retain money paid for services not rendered. An affirmative defense does not entitle a party to reap a windfall. Instead, when a breach is excused as a result of impracticability, the breaching party *remains liable for restitution. See, e.g.*, Restatement (Second) of Contracts § 272.

3

Summary judgment in Plaintiffs' favor is appropriate. However, in light of the fact that Plaintiffs have not yet moved for class certification, Plaintiffs respectfully request that the Court either find that BU has waived any arguments related to one-way intervention or defer a ruling until after class certification is decided and the opt-out period has passed.[1]

## II.    <u>FACTUAL BACKGROUND</u>

In accordance with Local Rule 56.1, Plaintiffs submitted their SOF contemporaneously herewith and respectfully refer the Court to that document for a full account of the material, undisputed facts, and full record references. For the Court's convenience, a brief summary of those facts appears below.

For the Spring 2020 semester, BU offered admitted students the option of registering for either (1) in-person courses or (2) online courses. SOF ¶¶ 1-4. Each Student Plaintiff accepted

---

[1] Plaintiffs submit their Motion in accordance with the Court's schedule, which directs class certification motions to be filed after summary judgment is resolved. In light of the one-way intervention doctrine, Plaintiffs respectfully request that the Court either (1) find that BU has waived any protection afforded by this doctrine (because BU has never objected to the Court's schedule sequence first set forth at ECF No. 64 (January 7, 2021), and indeed jointly moved to modify the schedule on other grounds, ECF No. 71 (August 19, 2021), and for another extension to the schedule, ECF No. 81 (Jan. 18, 2022), without ever objecting to or seeking to change the sequence of the Court's schedule), or (2) defer ruling on Plaintiffs' Motion until after the Court rules on Plaintiffs' forthcoming Motion for Class Certification. *See, e.g.*, *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 966 F. Supp. 2d 59, 61, n.1 (D. Mass. 2012), *on reconsideration*, 2013 WL 4058916 (D. Mass. Aug. 9, 2013), *aff'd*, 765 F.3d 59 (1st Cir. 2014) (explaining that, under the "procedural preference" of "one-way intervention," "the question of whether a class will be certified should be resolved before the merits of an action are decided" but noting that "defendants may waive this procedural order, and may opt to have the merits of an action decided first"); *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 4012095, at *1 (W.D. Pa. July 14, 2020) ("[T]he Court will defer ruling on the Motion for Summary Judgment until after the Court has ruled on a motion to certify a class."). Plaintiffs met and conferred with BU pursuant to L.R. 7 on this issue. BU will not concede that it waived any objection to Plaintiffs' motion based on the one-way intervention doctrine. BU explicitly agreed that nothing prevents Plaintiffs from filing this Motion, but asserted that any ruling on such a motion should be deferred until after a determination on class certification and, if certified, after any opt-out period closes.

4

BU's offer for the former by registering for courses that BU had represented—through BU's online registration portal, Student Link, as well as its online Bulletin—would be taught in-person. *Id.* ¶¶ 16-18, 21-29. After registration, BU charged students tuition and fees based on the nature of the courses for which each had registered (*i.e.*, whether in-person or online, and based on the number of credits). *Id.* ¶¶ 19, 30-32, 47-49. Having registered for in-person courses, Plaintiffs were charged (1) more in tuition per credit and (2) more in mandatory fees than students who instead registered for online courses. *Id.* ¶¶ 10-15. Plaintiffs paid their tuition and fees for the Spring 2020 semester based on the in-person courses for which each Student Plaintiff registered. *Id.* ¶ 19.

████████████████████████████████████████████████ *id.* ¶¶ 24, 34, 37, for the first half of the Spring 2020 semester, Student Plaintiffs (1) attended classes in person on BU's campuses, and (2) had access to campus facilities (*e.g.*, libraries and the Fitness & Recreation Center), in-person programs (*e.g.*, athletic events and student clubs), and other benefits that BU communicated on its website in-person students' mandatory fees paid for. *Id.* ¶¶ 39-40 (explaining Student Plaintiffs had in-person instruction for first half of the semester); *id.* ¶¶ 50-52 (describing on-campus benefits paid for through mandatory fees); *id.* ¶¶ 54-57 (explaining Student Plaintiffs had access to facilities and resources paid for through mandatory fees for first half of the semester).

However, effective March 16, 2020, BU switched all in-person courses to fully online formats, closed campus, and ceased providing access to campus facilities and in-person resources. *Id.* ¶¶ 62-65. As a result, for roughly half of the Spring 2020 semester, Student Plaintiffs and other students who had registered, paid for, and reasonably expected to receive in-person courses, and accompanying campus access—consistent with BU's intent and numerous

[PUBLIC VERSION - REDACTED]

representations—were denied such instruction and access. *Id.* ¶¶ 62-76. Despite failing to fulfill the reasonable expectations of students (including Student Plaintiffs) that BU intentionally created, BU has failed to issue any refund for Plaintiffs' tuition and mandatory fee payments for the Spring 2020 semester. *Id.* ¶¶ 77-81.

### III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Garfield v. Gorilla, Inc.*, 2015 WL 4028198, at *1 (D. Mass. July 1, 2015) (Stearns, J.); *see also Ameritas Life Ins. Corp. v. Brown*, 2010 WL 3895490, at *2 (D. Mass. Sept. 29, 2010) (granting plaintiffs' motion for summary judgment on breach of contract claim where undisputed facts established all elements of the claim); *GE Cap. Healthcare Fin. Servs. v. Fall River Walk-In Emergency Med. Off., P.C.*, 2004 WL 40522, at *3 (D. Mass. Jan. 7, 2004) (granting plaintiff's motion for summary judgment "[b]ecause no genuine issue of material fact exists as to the plaintiff's liability claim").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). Although all reasonable inferences are drawn in the nonmovant's favor, the court cannot "draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (quotation and citation omitted).

"[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition) without explaining the contradiction

6

or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). "When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony has changed," and as a result "[n]othing in [the Supreme Court's *Cleveland* decision] or in First Circuit law permits a [party] to do a volte-face from her deposition admissions." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 30 (1st Cir. 2019) (quoting *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994)).[2]

And irrespective of whether the substantial evidence supporting summary judgment is based in admissions, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted).

A court may grant summary judgment on some issues, *e.g.*, liability, while deferring others, *e.g.*, damages, until trial. *See Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*, 425 F.

---

[2] *See also Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 51 (1st Cir. 2019) (affirming district court striking affidavit statements contradicting deposition testimony); *T.K. through G.K. v. Town of Barnstable*, 2020 WL 3183164, at *4, n.3 (D. Mass. June 15, 2020) (striking statements in non-moving party's affidavit submitted with their summary judgment opposition that contradicted deposition testimony because non-moving party who did "[not] attempt[] to correct the deposition testimony at any time prior to the filing of the affidavit in opposition to summary judgment" failed to offer satisfactory explanation for the change in testimony); *Mandarini v. Accurate Engineered Concrete, Inc.*, 2019 WL 7371942, at *2 (D. Mass. Dec. 31, 2019) ("The law doe not permit [party] to contradict his sworn deposition testimony and sworn interrogatory answers by submitting an affidavit to manufacture conflicts of fact so as to defeat summary judgment.").

[PUBLIC VERSION - REDACTED]

Supp. 3d 57, 58 (D. Mass. 2019) (granting cross-motion for summary judgment as to liability, but not damages, where moving party established that it was entitled to relief but amount of damages was disputed).

### IV.   <u>ARGUMENT</u>

There is no genuine issue of material fact as to Plaintiffs' breach of contract claims. To prevail, Plaintiffs must show that: (1) Plaintiffs and BU entered valid contracts under which BU was to provide Student Plaintiffs with in-person instruction and access to campus facilities and resources for the Spring 2020 semester; (2) Plaintiffs performed their contractual obligations; (3) BU breached its contractual obligations; and (4) Plaintiffs experienced damages as a result. *See Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013) (explaining elements of breach of contract under Massachusetts law). BU admits, and thus cannot reasonably dispute, facts sufficient to establish each element, making a grant of summary judgment in favor of Plaintiffs appropriate. *See Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 143 (D. Mass. 2006) ("If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.").

### A.   **Plaintiffs and BU Entered Valid Contracts for the Spring 2020 Semester for In-Person Instruction and Access to Campus Facilities and Services**

"The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018); *see also Vasconcellos v. Arbella Mut. Ins. Co.*, 853 N.E.2d 571, 574 (Mass. App. Ct. 2006). Although contracts can be either express or implied, implied contracts "require[] the same elements as an express contract[,] differ[ing] only in the method of expressing mutual assent." *S. Shore Hellenic Church v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197, 234 n.43 (D. Mass.

[PUBLIC VERSION - REDACTED]

2016) (citation omitted). "[M]utual assent, [or] a 'meeting of the minds,' occurs when there is

'an offer by one [party]' and an 'acceptance of it by the other.'" *Sea Breeze Ests., LLC v.

Jarema*, 113 N.E.3d 355, 360 (Mass. App. Ct. 2018) (internal citations omitted).

In determining the specific terms of a contract between a student and university,

Massachusetts courts "employ the standard of reasonable expectation." *Bleiler v. Coll. of Holy

Cross*, 2013 WL 4714340, at *15 (D. Mass. Aug. 26, 2013). As the First Circuit has explained:

> Where…a private-school student or former student sues a school alleging breach
> of contract, the standard of reasonable expectation applies. Under this reasonable
> expectation standard, courts ask, in interpreting the contractual terms, "what
> meaning the party making the manifestation, the university, should reasonably
> expect the other party [, the student,] to give it."

*Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61 (1st Cir. 2016) (internal

citations omitted).[3] In other words, and as this Court has recognized, the inquiry is what the

student should have reasonably expected, based on the university's manifestations. *See* ECF No.

63, at 7, n.6 (determining that a "review of the specific representations BU made during the

billing and course registration processes" was necessary to reveal whether "[any] student could

have reasonably expected payment of tuition and fees and registration for classroom courses to

entitle [them] to in-person instruction and access to on-campus facilities and resources").

---

[3] *See also Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) ("We interpret
[student-university] contractual terms in accordance with the parties' reasonable expectations,
giving those terms the meaning that the university reasonably should expect the student to take
from them..") (internal citation omitted); *Dismukes v. Brandeis Univ.*, 2021 WL 1518828, at *4
(D. Mass. Apr. 16, 2021) ("[The reasonable expectations test considers 'what meaning' Brandeis
'should reasonably expect' a student in Dismukes's position to give to the relevant handbook
provisions.") (internal citation omitted); *Morris v. Brandeis Univ.*, 2001 WL 1470357, at *3
(Mass. Super. Sept. 4, 2001), *aff'd*, 804 N.E.2d 961 (Mass. App. Ct. 2004) (explaining that in
evaluating student's breach of contract claim at summary judgment, the relevant inquiry was
whether "[the university] failed to meet those expectations which it should reasonably expect
students such as [plaintiff] to have under the Handbook").

[PUBLIC VERSION - REDACTED]

Importantly, "[t]he student-college relationship is essentially contractual in nature." *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 145 (D. Mass. June 23, 2021) (quoting *Mangla v. Brown Univ.*, 135 F.3d. 80, 83 (1st Cir. 1980)); *see also Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 54 (D. Mass. 2021) ("In the private education context, Massachusetts law has long recognized 'a contractual relationship between the school and the student…'") (quoting *DMP v. Fay School ex rel. Bd. of Trustees*, 933 F. Supp. 2d 214, 223 (D. Mass. 2013). "[T]he promise, offer, or commitment that forms the basis of a valid contract can be derived from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials." *Guckenberger v. Bos. Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997). Registration materials can also provide the terms of a university's offer and, if accepted, commitment. *See Mangla*, 135 F.3d. at 83.

1.  **Plaintiffs accepted BU's offer for in-person courses and campus access for the Spring 2020 semester.**

Here, there is undisputed evidence that: (1) through its registration materials, online Bulletin, and website, BU made an offer of in-person instruction and campus access to the Student Plaintiffs for the Spring 2020 semester, (2) Student Plaintiffs accepted that offer by registering for in-person courses, and (3) Plaintiffs gave consideration by paying tuition and fees for those courses. Thus, Plaintiffs and BU entered valid contracts, the terms of which can be derived, in part, from the reasonable expectations BU created among students through its registration materials, website, and online Bulletin. *See, e.g., Guckenberger*, 974 F. Supp. at 150 (D. Mass. 1997); *Mangla*, 135 F.3d. at 83; *Omori*, 533 F. Supp. 3d at 54–55.

On the first point—an offer—BU admits that, for the Spring 2020 semester, BU provided students with the option of registering for *either* (1) in-person courses *or* (2) online courses. SOF ¶¶ 4, 46. BU further concedes that it thoroughly distinguished between these two options across

10

its registration and promotional materials. For example, for in-person courses for the Spring 2020 semester (but not online courses), the "planned classroom location[]" was listed on Student Link registration interface. *Id.* ¶ 24. Additionally, BU represented through the online Bulletin that in-person courses and programs would involve on-campus study and events. *Id.* ¶¶ 26-28. BU also admits that ███████████████████████████████████████████████████ ████████ *d.* ¶ 50, where the fee descriptions described facilities and resources located on-campus.[4] *Id.* ¶¶ 51-52. BU further distinguished in-person from online courses by charging different tuition and fees for each, with higher amounts[5] charged to students (including Student Plaintiffs) registering for in-person courses. *Id.* ¶¶ 9-15.[6]

---

[4] BU website's description of mandatory fees has changed since the Spring 2020 semester. For example, the description of the "Community Service Fee" (1) no longer specifies that this fee is charged only to students "on the Charles River Campus" and (2) mentions "both online and in-person programs." SOF ¶ 51, n.15.

[5] Plaintiffs cite and rely throughout upon BU's June 4, 2021 "Responses to Plaintiffs' First Set of Requests for Admission to Defendant." Although BU attempted to amend its responses in April 2022 (specifically, its response to Plaintiffs' Request for Admission No. 10, which asks BU to admit that it charges less in tuition for online courses than in-person courses—which BU previously admitted, but now seeks to deny) failed to comport with the Federal Rules. Under Fed. R. Civ. P. 36(b), "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." (emphasis added). An admission can be withdrawn or amended only if "it would promote the presentation of the merits of the action and the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* Here, BU has not moved to amend or withdraw its admissions. Even if it had, as discussed herein, there is no reasonable dispute as to the ultimate fact that BU charges less in tuition for online courses than in-person courses. Accordingly, it would not promote the presentation of the merits of the action to allow BU to amend its admissions.

[6] Specifically, for the Spring 2020 semester, across its various online programs, BU charged online students only one fee: a $60 Student Services Fee. SOF ¶ 15. Meanwhile, for students enrolled on BU's *physical campuses,* ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████ *d.* ¶ 13.

[PUBLIC VERSION - REDACTED]



Critically, BU admits that ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ *See, e.g., id.* ¶¶ 24, 33 ██████████████████

████████████████████████████████████████

████████████████████████████████████████

(emphasis added); *id.* ¶ 34 ████████████████████████████

████████████████████████████████████████ (emphasis

added); *id.* ¶ 36 ██████████████████████████████████

████████████████████████████ *id.* ¶ 37 ██████████████

████████████████████████████████

████████ *d.* ¶¶ 41, 45 ██████████████████████

████████████████████████████████████ *id.* ¶ 58

████████████████████████████████████

████████████████████████████████████████

████████████████████████████

Based on these factual admissions, BU intended for students like the Student Plaintiffs to understand that BU was offering distinct options—in-person education or online education—and to reasonably expect that, if they accepted BU's offer for in-person education for the Spring 2020 semester, they would receive in-person, on-campus instruction and access to campus facilities and resources for that semester. *See Omori*, 533 F. Supp. 3d at 54-55.

Plaintiffs accepted BU's offer for in-person education and access to campus facilities and in-person resources when they registered for courses for the Spring 2020 semester that BU had

[PUBLIC VERSION - REDACTED]

represented, through Student Link and its online Bulletin, would be held in-person, and paid the

tuition and fees BU demanded exclusively of in-person students. SOF ¶¶ 19, 29, 32, 49.

Plaintiffs thereby accepted BU's offer for in-person instruction and accompanying campus

access. Finally, Plaintiffs gave consideration when, as BU admits, they paid the tuition and fees

(specific to their selection) of their in-person courses. *Id.* ¶ 32, 49. Accordingly, Plaintiffs and

BU formed a valid contract. *See Omori*, 533 F. Supp. 3d at 55.

> **2. BU created a reasonable expectation that Plaintiffs would receive in-person instruction and campus access for the full Spring 2020 semester.**

As noted above, BU's offer and Plaintiffs' (and all in-person students') manifestations of

acceptance included a material term that BU would provide in-person instruction and access to

campus facilities and services. BU admits that



SOF ¶¶ 24-29, 33-37, 50-52. And BU further admits that

*Id.* ¶¶ 41-46, 58-61. With the benefit of the "further factual

development" directed by the Court, ECF No. 63 at 7, BU cannot reasonably dispute that it

intended to create, made representations to create, and understands that it did create a reasonable

expectation among Student Plaintiffs (and all other students) that, in exchange for registering and

paying tuition and fees for in-person instruction and campus access, they would receive such

instruction and access for the full Spring 2020 semester.

BU's witnesses repeatedly admitted that

13

For example, BU admits

SOF ¶ 33. And BU's Provost testified:

*Id.* ¶ 34 (emphasis added). Moreover, President Brown testified that

*Id.* ¶ 35.[7] Finally, President Brown testified

*Id.* ¶ 54. In other words, BU has readily and repeatedly admitted—and, thus, cannot genuinely dispute—that, based on BU's representations

---

[7] Additionally, President Brown testified that

SOF ¶ 36. Meanwhile, Provost Morrison admitted

*d.* ¶ 37.

14

[PUBLIC VERSION - REDACTED]

Yet, *even if* BU had not made such explicit admissions about what students would expect based on BU's representations, the evidence reflects that BU made specific representations during the Spring 2020 registration period from which Plaintiffs would have "reasonably expected [their] payment of tuition and fees and registration for classroom courses [would] entitle [them] to in-person instruction and access to on-campus facilities and resources." ECF No. 63, at 7, n.6. For example, BU admits that it listed classrooms for in-person courses (but not for online courses) in the Student Link registration interface, SOF ¶ 24; described in-person courses and programs in the online Bulletin as involving "on campus" components, *id.* ¶¶ 26-28;

███████████████████████████████████████████████████

████████████ *id.* ¶¶ 50-52; and charged students who registered for in-person courses more tuition and mandatory fees than charged to online students, *id.* ¶¶ 10-15. Such representations from BU were also accompanied by the parties' previous interactions, *i.e.*, that (1) in semesters prior to Spring 2020, BU had never switched students enrolled in courses that had been represented to be in-person to fully remote instruction part-way through the semester, *id.* ¶ 46, and (2) for the first half of the Spring 2020 semester, Plaintiffs *did* attend their courses in-person, and ████████ had access to campus facilities and in-person services. *Id.* ¶¶ 39-40, 54-57.

Thus, BU made numerous representations which, collectively and in context, BU should have reasonably expected (and which BU's testimony admits BU did expect) to create an understanding in the Student Plaintiffs that if they registered and paid for in-person courses and campus access for the Spring 2020 semester, they would in fact receive in-person instruction and access to campus facilities and resources for the entire Spring 2020 semester. *See Massachusetts Inst. of Tech. v. Guzman*, 90 Mass. App. Ct. 1102, 56 N.E.3d 894 (2016) ("Here, the question becomes whether [plaintiff], upon reading the provisions of 'Graduate Policies & Procedures'

15

and in light of the interactions between all relevant parties up until May, 2005, could 'reasonably believe,' that [her academic department] lacked authority to override the interdepartmental committee in terms of determining her continued eligibility for remaining in the program.") (internal citations omitted).

Moreover, BU admits that, at the same time it was deliberately creating the Student Plaintiffs' expectation that they would receive in-person instruction and campus access for the whole Spring 2020 semester, BU did *nothing* to create a reasonable expectation in such the Student Plaintiffs that (1) campus might close and/or in-person instruction might be suspended for half of the semester nor (2) in such circumstance, BU would not issue any refund of students' tuition and fees.[8] For example, Provost Morrison admitted ████████████████████

---

[8] BU did not have to specifically foresee that it might close campus or suspend in-person instruction (whether due to a global pandemic or any other reason) in order to set the parties' expectation that, in the event of a campus closure or other suspension of services, BU would retain students' tuition and fee payments. In fact, contracting parties, including universities, routinely include contract provisions regarding the occurrence of a *force majeure*, which this Court recently described as "an extraordinary event beyond the control of the parties that relieves each of any liability or obligation to perform." *Chong v. Ne. Univ.*, 2021 WL 1857341, at *4, n.6 (D. Mass. May 10, 2021). In *Chong*, this Court determined that Northeastern University students could not reasonably have expected to receive in-person instruction and unrestricted access to on-campus facilities because the University handbook included a *force majeure* provision under which, for example, Northeastern "expressly disclaim[ed] liability for any 'delay or failure to provide educational or other services or facilities due to causes beyond its reasonable control.'" *Id.* (internal citation omitted). Here, BU admits it made no similar representation. BU should not be able to impute the protections provided by a *force majeure* clause where one did not exist, and where BU admits that it otherwise did nothing to create the expectation in Plaintiffs that it would retain their tuition and fee payments in the event of a campus closure and suspension of in-person instruction. *See, e.g., Connecticut Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76 (S.D.N.Y. 1991) ("[TWA's] final argument … is that it should be excused from satisfying the contract because events beyond its control prevented it [from] … meet[ing] its obligations… TWA could have negotiated for a force majeure clause in the contract. ***This was not done and such a clause cannot be read into the contract***." (emphasis added)); *See also Gaviria v. Lincoln Ed. Services Corp.,* No. 20-18552 (KM) (JBC), 2021 WL 2886086 (D.N.J. July 8, 2021)

[PUBLIC VERSION - REDACTED]



████████ SOF ¶ 41-46. ████████ BU admits that, ████████ . *Id.* ¶ 58 ████████ ████████ BU further acknowledges that ████████ ████████ *Id.* ████████ ████████ *id.* ¶ 59 (explaining that, at the time of enrollment for the Spring 2020 semester, BU did not communicate to students that if campus closed and students could not access facilities, the ████████ would not be refunded). Notably, the "Tuition & Fees" page on BU's website now states that "[t]uition and fees will not be refunded in the event the mode of instruction changes for any part of the academic year." *Id.* ¶ 41, n.14. However, this language was *not* present when Plaintiffs and other students registered and paid for the Spring 2020 semester. *Id.*

In sum, BU's admissions about what students (including the Student Plaintiffs) would understand and expect for the Spring 2020 semester, as well as BU's admitted and specific representations (or, lack thereof) during the registration and billing process for the Spring 2020

---

(holding that even a generic force majeure clause was not sufficient to defeat student plaintiff claims for restitution due to school closure during COVID-19 because the clause merely excused the breach, and did not contain a specific provision entitling the school to retain payments for services not provided).

17

semester, indisputably establish that BU (1) intended to and did create a reasonable expectation among students that BU would deliver a full semester's worth of in-person instruction and access to campus facilities and services, and (2) did *nothing* to create a reasonable expectation that, in the event BU could not meet its obligations, BU would retain students' full tuition and fees.

### B.  Plaintiffs Performed by Paying Tuition and Fees for the Spring 2020 Semester

BU cannot reasonably dispute that Plaintiffs performed their contractual obligations, because BU admits that Plaintiffs paid the tuition and fees BU demanded of all students who registered for courses represented to be delivered in person. SOF ¶¶ 19, 32, 49.

### C.  BU Breached Its Contract with Students

In the context of student-university contracts, "[a] breach … is established if the facts show that the university has failed to meet [the student's] reasonable expectations." *Walker*, 840 F.3d at 61–62 (quotation omitted). *See also Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 65 (D. Mass. 2020) ("[C]ourts look to see if a university has failed to meet the standard of reasonable expectations, measured by what meaning the university should reasonably expect the other party to have given terms in its contract.") (internal citations omitted).

As discussed above, *see infra* Sec. IV.A.2, the evidence shows that BU admits that it intended to create, and made representations to create, a reasonable expectation among students (including Student Plaintiffs) that BU would provide in-person instruction and campus access for the entire Spring 2020 semester to students who registered for in-person courses and paid the associated tuition and fees.

There is no reasonable dispute that BU closed campus and thus failed to provide bargained-for in-person instruction and campus access for the entire Spring 2020 semester. SOF ¶¶ 62-76. As a result, BU breached the parties' contract. *See Walker*, 840 F.3d at 61–62. BU transitioned all in-person courses to online only formats beginning on March 16, 2020, after

18

which BU denied Plaintiffs the in-person, classroom-based instruction for which they had

contracted. SOF ¶¶ 63-65, 77-80. BU also took steps to "effectively close the campus" on March

17, 2020, thereby denying students access to, for example: campus libraries; athletic facilities;

academic and research buildings, including laboratories and studios; in-person meetings of

student organizations and groups; and clinical opportunities. *Id.* ¶¶ 62-65, 67-76.

All told, BU did not provide the Student Plaintiffs and other in-person students with the

in-person, on-campus instruction and campus access which, BU intended to provide and students

(including Student Plaintiffs) reasonably expected to receive when they registered and paid

tuition and fees for the Spring 2020 semester. Thus, due to BU's own admissions about its

campus closure and suspension of in-person instruction, there is no question that BU breached its

contracts with Plaintiffs. *See Walker*, 840 F.3d at 61–62.

### D.  BU Cannot Refuse Refunds Based on the Defense of Impracticability

BU's purported defense of impracticability, *see* ECF No. 66, Ninth Defense, at 45, does

not save BU from liability to Plaintiffs, nor does it warrant denying this Motion. Having taken no

action to create a reasonable expectation among students that BU would retain students' full

tuition and fee payments in the event BU was unable to provide in-person instruction and

campus access, BU has no contractual right to refuse to all of Plaintiffs' tuition and fees. And

BU's impracticability defense does not change BU's legal position.

The Restatement (Second) of Contracts § 272[9] makes clear that equitable "mitigating

doctrines" apply where excused performance based on impracticability or frustration would have

---

[9] Massachusetts has often followed the Second Restatement, though Massachusetts courts
have not considered this particular provision. *See, e.g., Knott v. Racicot*, 812 N.E. 2d 1207, 1214
(Mass. 2004) ("We henceforth adopt the Restatement (Second) of Contracts § 87(1)…"); *Rae v.*

[PUBLIC VERSION - REDACTED]

the "harsh effect of denying either party any recovery following the discharge of one party's duty based on impracticability." Indeed, a "party whose duty … has been discharged because of impracticability of performance or frustration of purpose may already have … received some of the other party's performance…. [I]t will generally be appropriate to allow [the party who has performed] a claim for restitution to the extent that his performance has benefited the other." *Id.* at Cmt. b. Consistent with the Restatement, courts have long held that restitution is an appropriate equitable remedy under theories of implied contract in cases of impracticability and frustration of purpose. *See, e.g.*, *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 871-72 (E.D. Mich. 2013) ("Restitution is awarded under an equitable theory of implied contract … to prevent unjust enrichment at the expense of another party … in cases of impracticability and frustration of purpose." (quoting *Greg Constr. Co. v. Mitchell Buick Sales, Inc.*, 1996 WL 33359281, at *2 (Mich. Ct. App. Sept. 10, 1996))); *see also Waste Stream Environmental, Inc., v. Lynn Water and Sewer Commission*, 15 Mass. L. Rptr. 723 (Mass. Super. Ct. 2003) ("Restitution is a common form of relief in contract cases." (quoting Restatement (Second) of Contracts, Topic 4. Restitution, at 199)).

Thus, even if BU succeeds in establishing an impracticability defense, BU must still provide restitution to students, including Student Plaintiffs, as relief for BU's then-excused non-performance. *See, e.g.*, *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1097 (D.

---

*Air-Speed, Inc.*, 435 N.E.2d 628, 632 (1982) (We now adopt the rule set forth in the Restatement (Second) of Contracts § 302…"); *see also John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77 (D. Mass. 1999) ("Massachusetts law also adopts Restatement (Second) of Contracts §§302, 304, 308 and 315…"). And the First Circuit has endorsed looking to the Restatement (Second) of Contracts in the absence of controlling law in the jurisdiction. *See, e.g.*, *Importers Ctr., Inc. v. Newell Cos., Inc.*, 758 F.2d 17, 20 & n.3 (1st Cir. 1985) (looking to Restatement (Second) of Contracts absent controlling Puerto Rico law).

[PUBLIC VERSION - REDACTED]

Ariz. 2021) (holding that even if it was impossible for university to perform, Restatement (Second) of Contracts § 272 recognized that it was generally appropriate to allow a party who had performed to seek restitution); *Gaviria v. Lincoln Ed. Services Corp.*, No. 20-18552 (KM) (JBC), 2021 WL 2886086 (D.N.J. July 8, 2021) (holding that university was required to make equitable restitution even when breach was excused); *Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020) (holding that in the event of impossibility, the deprived party is still entitled to a refund); *see also Facto v. Pantagis*, 915 A.2d 59, 63 (N.J. Super. App. Div. 2007) (holding that where plaintiffs contracted to hold a wedding reception at a banquet hall that was cut short by a power failure, although the banquet hall was excused from performance by a force majeure clause, plaintiffs were also relieved of the obligation to pay defendants the full contract price for the reception).

### E. Plaintiffs Were Damaged When They Did Not Receive the In-Person Instruction and Campus Access for Which They Contracted

As a direct result of BU's breach (*i.e.*, BU's closure of campus and transition to entirely remote instruction for roughly half of the Spring 2020 semester), Plaintiffs were damaged. As set forth above, BU charged higher tuition rates and more fees to students who registered for in-person courses. For example, Plaintiffs and other students who had registered and paid tuition and fees for in-person courses were not provided with the benefits discussed above, *see infra* Sec. IV.C, including in-person classes, clinical and other experiential learning opportunities, in-person club meetings, and the use of academic and recreational facilities. As one undergraduate student explained in an email to President Brown, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

[PUBLIC VERSION - REDACTED]

SOF ¶ 79.

The *fact* of Plaintiffs' damages cannot genuinely be disputed, given BU's abundant admissions about its breach. *See infra* Sec. IV.C. Likewise, in light of BU's own published tuition and fee rates for the Spring 2020 semester, the precise *amount* of Plaintiffs' damages is also not in question. "The standard measure of damages for breach of contract is the benefit of the bargain-that is, the difference in value between what the plaintiff would have received if the defendant had performed, and what the plaintiff did receive." *Arno v. Arbella Mut. Ins. Co.*, 2005 WL 2739905, at *3 (Mass. Super. Aug. 26, 2005) (granting plaintiff's motion for summary judgment as to both liability and amount of damages for breach of contract). Here, by charging different amounts in tuition and fees for its online and in-person programs, SOF ¶¶ 9-15, BU itself has itself acknowledged a difference in value between what students contracted for (a *full* semester of in-person instruction with access to campus facilities and resources, as described in BU's description of mandatory fees charged of students enrolled in in-person courses) and what students received (in-person instruction with access to campus facilities and resources, as described in BU's description of mandatory fees charged of students enrolled in in-person courses, for *half* of a semester, followed by eight weeks of online instruction with no access to on-campus facilities and resources).

For tuition, Plaintiffs received the contracted-for in-person instruction for 55 of 109 days, or 50 percent, of the Spring 2020 semester. *Id.* ¶ 76. Based on BU's own posted tuition rates for the Spring 2020 semester, Plaintiffs paid the following in tuition per credit:

[PUBLIC VERSION - REDACTED]

| | Tuition Paid Per Credit |
|---|---|
| **Undergraduate Plaintiffs** | ██████ |
| **Cox** | ██████ |
| **Tran** | ██████ |

However, for half of the semester, Plaintiffs received online-only instruction ████████

████████████████████████████████████████████[13] Thus, for

tuition, damages would be calculated for each Plaintiff as follows:

$$\text{Damages} = \left(\frac{Tuition\ paid\ per\ credit \times Spring\ 2020\ credits}{2}\right) - \left(\frac{Online\ only\ cost\ per\ credit \times Spring\ 2020\ credits}{2}\right)$$

For example, for a full-time, undergraduate Plaintiff enrolled in 16 credits for the Spring

2020 semester, their tuition damages would range from ████████ depending on the cost-

per-credit of online-only courses used as the comparator:

Using ███ online-only credit as comparator:



Using ███/online-only credit as comparator:



Using ██████/online-only credit (average of ████████ per credit) as comparator:

---

[10] SOF ¶ 11. █████████████████████████████████████████

████████████████ *Id.* ¶ 11, n.4.

[11] SOF ¶ 11, n.3.

[12] SOF ¶ 11, n.4.

[13] SOF ¶ 11.

[PUBLIC VERSION - REDACTED]



For mandatory fees, Plaintiffs received the contracted-for campus services and access for 56 of 109 days, or 51 percent, of the Spring 2020 semester. *Id.* ¶ 76. Thus, Plaintiffs are entitled to a refund of 49 percent of each mandatory fee. Based on BU's own posted fee rates for the Spring 2020 semester, below is what each Student Plaintiff paid for the Spring 2020 semester, as well as the damages the Plaintiffs are owed:

### FULL-TIME, UNDERGRADUATE PLAINTIFFS[14]

|  | Amount Charged[15] | Damages (Amount Charged X 49%) |
|---|---|---|
| **Community Service Fee** | ███ | ███ |
| **Health & Wellness Fee** | ███ | ███ |
| **Student Services Fee** |  |  |

### FULL-TIME, GRADUATE PLAINTIFFS[17]

|  | Amount Charged[18] | Damages (Amount Charged X 49%) |
|---|---|---|
| **Health & Wellness Fee** | ███ | ███ |
| **Student Services Fee** |  |  |

Lastly, even if there is a dispute as to the amount of damages that BU owes Plaintiffs, the Court can—and should—still grant Plaintiffs' Motion as to *liability*. *See, e.g., Richwell*, 425 F. Supp. 3d at 58; *W. Sur. Co. v. MCMUSA, LLC*, 2014 WL 12644257, at *5-6 (D. Mass. Aug. 29,

---

[14] Dutra, Dube, N. Silulu, and Bornstein (the "Undergraduate Plaintiffs").

[15] SOF ¶ 13.

[16] Because online students paid a $60 Student Services Fee, Plaintiffs calculate damages as to the Student Services Fee slightly differently to account for the proportion properly attributed to online students. Specifically, Plaintiffs subtract the online Student Services Fee ($60) from the amount charged to in-person students, and then multiply that amount by 49%.

[17] Cox was a full-time graduate student in the School of Social Work, while Tran was a full-time student in the Graduate Medical Sciences program.

[18] SOF ¶ 76.

[PUBLIC VERSION - REDACTED]

2014) ("[A] genuine dispute as to the amount of damages does not preclude summary judgment as to liability.") (granting motion for summary judgment as to liability, but not the amount of damages, on breach of contract claim); *DSSDR, LLC v. Zenith Infotech, Ltd.*, 2013 WL 6489944, at *4 (D. Mass. Dec. 9, 2013) (granting motion for summary judgment as to liability and denying motion without prejudice as to all alleged damages).

## V.   <u>CONCLUSION</u>

As set forth above, the evidence demonstrates that there is no genuine question of fact as to whether Plaintiffs, having registered and paid corresponding tuition and fees for in-person courses for the Spring 2020 semester, entered a valid contract under which BU created the reasonable expectation in Student Plaintiffs that they would receive (1) in-person instruction and (2) on-campus access and services for the full duration of that semester. It is further undisputed that Plaintiffs performed their end of the bargain when they paid BU tuition and fees for the Spring 2020 semester. Likewise, BU admits that, for roughly half of the Spring 2020 semester, it failed to provide Student Plaintiffs with the expected and planned in-person instruction and access to campus, constituting BU's breach. Finally, there can be no question that Plaintiffs— who lost access to not only in-person instruction, but also a wide range of on-campus benefits, from the use of libraries to the opportunity to complete clinical rotations—were damaged as a result, in amounts that can be calculated based on BU's own posted tuition and fee rates for Spring 2020. For these reasons, pursuant to Fed. R. Civ. P. 56(a), Plaintiffs are entitled to judgment as a matter of law, and their Motion should be granted.

[PUBLIC VERSION - REDACTED]

Respectfully submitted,

Date: June 3, 2022

/s/Patrick F. Madden
Patrick F. Madden*
pmadden@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T. 215.875.3000

E. Michelle Drake*
emdrake@bm.net
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
(612) 594-5933

HECHT PARTNERS LLP
Conor B. McDonough
cmcdonough@hechtpartners.com
Kathryn Lee Boyd*
lboyd@hechtpartners.com
125 Park Avenue, 25th Floor
New York, NY 10017
T. 212.851.6821

Kristen Nelson*
knelson@hechtpartners.com
6420 Wilshire Boulevard, 14th Floor
Los Angeles, CA 90048
T. 212.851.6821

ANASTOPOULO LAW FIRM, LLC
Blake G. Abbott*
blake@akimlawfirm.com
Roy T. Willey IV*
roy@akimlawfirm.com
Eric M. Poulin*
eric@akimlawfirm.com
32 Ann Street
Charleston, SC 29403
T. 843.614.8888

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman*
steve@hbsslaw.com

26

[PUBLIC VERSION - REDACTED]

1301 Second Avenue, Suite 2000
Seattle, WA 98101
T. 206.623.7292

Daniel J. Kurowski*
Whitney K. Siehl*
455 N Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
T. 708.628.4949
dank@hbsslaw.com
whitneys@hbsslaw.com

BURSOR & FISHER, P.A.
L. Timothy Fisher*
ltfisher@bursor.com
1990 N California Blvd, Ste 940
Walnut Creek, CA 94596
T. 925.300.4455

Joseph I. Marchese*
jmarchese@bursor.com
888 Seventh Ave.
New York, NY 10019
T. 646.837.7150

Sarah N. Westcot*
701 Brickell Ave., Suite 1420
Miami FL 33121
T.305.330.5512

FORREST,       LAMOTHE,       MAZOW,
MCCULLOUGH, YASI & YASI, P.C.
Michael C. Forrest
mforrest@forrestlamothe.com
2 Salem Green, Suite 2
Salem MA 01970
T. 617.231.7829

STANZLER LEVINE, LLC
Richard E. Levine
rlevine@stanzlerlevine.com
65 William Street, Suite 205
Wellesley, MA 02481

27

[PUBLIC VERSION - REDACTED]

T. 617.482.3198

LICHTEN & LISS-RIORDAN, P.C.
Harold L. Lichten
hlichten@llrlaw.com
729 Boylston St., Suite 2000
Boston, MA 02116
T. 617.994.5800

*COUNSEL FOR PLAINTIFFS*

*\*pro hac vice*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: June 3, 2022                    /s/Patrick F. Madden
                                      Patrick F. Madden

[PUBLIC VERSION - REDACTED]