UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10827-RGS

IN RE: BOSTON UNIVERSITY
COVID-19 REFUND LITIGATION

MEMORANDUM AND ORDER
ON CROSS MOTIONS FOR SUMMARY JUDGMENT

August 8, 2022

STEARNS, D.J.

Plaintiffs Julia Dutra, Gabriella Dube, Shakura Cox, Natalie Silulu, Valaauina Silulu,[1] Olivia Bornstein, and Venus Tran brought putative class action claims against the Trustees of Boston University (BU), alleging that BU reneged on a promise to its students to provide in-person instruction and services when BU's campus closed at the onset of the COVID-19 pandemic. The court consolidated the individual cases into a single action (Dkt # 29), and Plaintiffs filed a Second Consolidated Class Action Complaint (Dkt # 49) bringing claims for breach of contract (Count I), breach of implied contract (Count II), and unjust enrichment (Count III). After discovery, the parties reciprocally moved for summary judgment. For the following reasons, the

---

[1] Valaauina Silulu is Natalie Silulu's father. Mr. Silulu's claims rest on his agreement to repay his daughter's student loans.

court will ALLOW IN PART and DENY IN PART BU's motion and will DENY plaintiffs' motion without prejudice.

## BACKGROUND

### A. The COVID-19 Pandemic's Impact on BU's Spring 2020 Semester

Plaintiffs are former BU students seeking reimbursement of at least some of their tuition and student activity fees for the spring of 2020 semester. Before the semester began, plaintiffs enrolled in classes through BU's online registration portal and paid full tuition and several mandatory fees. Partway through the semester, COVID-19's spread led to fundamental changes to the structure of BU's educational services. On March 16, 2020, BU transitioned its in-person classes to remote platforms. The following day, BU announced that students were required to vacate the campus by March 22, 2020. The campus remained shut, and classes continued in a distance-learning mode for the remainder of the semester. BU's actions were taken in compliance with Massachusetts Governor Baker's emergency orders. Specifically, the Governor had, on March 15, 2020, limited public gatherings to twenty-five persons or fewer and, on March 23, closed all non-essential businesses and banned public gatherings of more than ten persons.

### B.  Plaintiffs' Tuition Payments

Prior to the commencement of the spring 2020 semester, the plaintiffs enrolled as full-time students for in-person courses.[2]  Cox paid $17,568 in tuition for the semester, while the remaining plaintiffs each paid $27,360, through direct payment and/or institutional aid and loans.  BU did not refund any portion of the tuition to plaintiffs after transitioning to remote instruction.  Plaintiffs completed their courses online and progressed toward their degrees.[3]

Critical to BU's motion are certain BU policies and statements.

**Bulletin Disclaimer.**  BU publishes annual online "Bulletins" describing BU's academic programs, courses, and policies.  The 2020 Bulletin stated that it was "the document of authority for all students" and that "[r]equirements listed here take precedence over information found elsewhere." BU's Statement of Material Facts (BUSOF) (Dkt # 100) ¶ 57.  The bottom of the Bulletin's home page contained a link labelled "Disclaimer."  The Disclaimer stated:

---

[2] In the spring of 2020, Dube, Dutra, Bornstein, and Natalie Silulu were enrolled as full-time undergraduate students; Tran was enrolled full-time in BU's Graduate Medical Sciences Division; and Cox was enrolled full-time in BU's School of Social Work.

[3] All plaintiffs except Bornstein eventually graduated.

3

> Boston University reserves the right to change the policies, fees, curricula, or any other matter in this Bulletin without prior notice and to cancel programs and courses. This Bulletin is to be read neither as part of a contractual agreement nor as a guarantee of the classes, courses, or programs described herein.

*Id.* ¶ 58.

**Access to Facilities Policy.** BU also posts on its website a statement titled "Access to University Facilities." The relevant portion states:

> Boston University is private property. The University reserves the right to grant or restrict access to any or all of its grounds, facilities, and programs. During business hours, the University's nonresidential facilities on both the Charles River and Medical Campuses will be open to students, parents, employees, contractors, guests, and invitees. During non-business hours, access to nonresidential facilities shall be limited to authorized personnel only.

*Id.* ¶ 65.

**Withdrawal and Refund Policy.** BU's Student Accounting Services website, which is linked to the website used by students and their parents to make tuition payments, includes a page setting out BU's "Official Withdrawal and Refund Policy." In the spring of 2020, the webpage opened with the admonition that "[s]tudents not attending Boston University must complete an official Withdrawal/Leave of Absence Form." *Id.* ¶ 66. Only after completion of the Form would tuition be canceled "in

4

accordance with the published refund schedule, based on the effective date of a student's official withdrawal or leave of absence." *Id.* ¶ 67. The Withdrawal and Refund Policy further stated that refunds "appl[y] to tuition only," and that "[a]ll fees are nonrefundable once classes have begun." *Id.*[4] The refund schedule provided that BU would give a 100% refund to students who withdrew on or before January 20, 2020, with the amount of the refund decreasing in steps to 20% on February 26, 2020. After that date, BU would not extend any refunds to withdrawing students. BUSOF ¶ 69.[5] No plaintiff sought a refund before the prescribed cutoff date(s).

### C. Plaintiffs' Fee Payments

Plaintiffs also seek a refund of fees they had paid before the spring 2020 semester began.

**Community Service Fee.** Dube, Dutra, Bornstein, and Natalie Silulu each paid the $60 Community Service Fee. In the spring of 2020, BU's website stated that the Community Service Fee "is charged to full-time

---

[4] After the spring 2020 semester ended, BU added language to a different part of its website clarifying that "[t]uition and fees will not be refunded in the event that the mode of instruction changes for any part of the academic year." Pls.' Counterstatement of Facts (Dkt # 107-17) ¶ 67.

[5] While the Withdrawal and Refund Policy did not apply to students in BU's School of Social Work, the School had a nearly identical refund schedule with a refund termination date of February 18, 2020.

5

Undergraduate Students **on the Charles River campus**." Pls.' Statement of Material Facts Ex. 21 (Dkt # 97-21) at 2 (emphasis in original). It described the fee as being "allocated directly to support student programs, which foster and engage the community." *Id*. The funds collected from the fee were to be distributed to some 500 student groups and organizations. *See id*.

**Student Services Fee.** All the student plaintiffs paid the Student Services Fee, which was assessed at $307 for undergraduate students and $172 for graduate students. The BU website stated that "[p]roceeds from this mandatory fee are allocated to support student service operations and technology resources across campus including, but not limited to, services at the George Sherman Union, East Campus Student Service Center, Residence Halls and other such student support spaces as well as campus network services." *Id*. at 7.

**Health & Wellness Fee.** Plaintiffs also paid the $219 Health & Wellness Fee. This fee was intended to "help offset the cost of [the] student Health Services clinic at 881 Commonwealth Avenue as well as the Fitness & Recreation Center and their satellite operations." *Id*. at 3-4.

**Sports Pass.** At the beginning of the 2019-2020 school year,

Bornstein and Natalie Silulu paid $130 for a Sports Pass. BU touted the Sports Pass as granting "admission to all home events for ice hockey, basketball, lacrosse and soccer – over 70 games and a value of over $600." *Id.* at 6.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted). A fact is material if it "has the potential to affect the outcome of the suit under the applicable law." *Lapointe v. Silko Motor Sales, Inc.*, 926 F.3d 52, 54 (1st Cir. 2019), quoting *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23 (1st Cir. 2017). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id.*

### A.   BU's Motion for Summary Judgment

    1.   Breach of Contract — Tuition Claims

To establish a breach of contract under Massachusetts law, a plaintiff must prove that "(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Bos.*, 342 Mass. 385, 387 (1961).   An implied contract "may be found to exist from the conduct and relations of the parties," *Jackson v. Action for Bos. Cmty. Dev., Inc.*, 403 Mass. 8, 9 (1988), quoting *Lidonni, Inc. v. Hart*, 355 Mass. 580, 583 (1969), and differs from an express contract "only in the manner of expressing mutual assent," *Katz v. Pershing*, 672 F.3d 64, 74 (1st Cir. 2012), quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 130 (1st Cir. 2005).

When students bring breach of contract claims against their university, the court turns to a reasonable expectation standard, asking "what meaning the party making the manifestation, the university, should reasonably expect the other party, the student, to give it."   *Walker v. President & Fellows of Harv. Coll.*, 840 F.3d 57, 61 (1st Cir. 2016) (internal punctuation omitted).

Student plaintiffs can establish a breach if they prove that the university failed to meet their reasonable expectations. *See id.* at 61-62. "In Massachusetts, statements in 'handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials can form the basis of a valid contract.'" *Rinsky v. Trs. of Bos. Univ.*, 2010 WL 5437289, at *11 (D. Mass. Dec. 27, 2010), quoting *Shin v. Mass. Inst. of Tech.*, 2005 WL 1869101, at *6 (Mass. Super. Ct. June 27, 2005). *Cf. LeMaitre v. Mass. Turnpike Auth.*, 70 Mass. App. Ct. 634, 638 (2007), *aff'd*, 452 Mass. 753 (2008) (finding it is "well settled" that the terms of a personnel manual may become an implied part of an at-will employee's employment contract if they meet the requirements for the formation of a unilateral contract).

Here, there is a genuine dispute of material fact as to whether BU made a binding promise to provide students in-person instruction (or tuition refunds should in-person classes become unavailable), a promise on which students relied in prospectively paying their tuition. Plaintiffs locate this contractual right in certain representations made in BU's course registration materials. BU has failed to produce evidence that would conclusively preclude the possibility that a reasonable jury might agree that such a binding contract existed. First, the Withdrawal and Refund Policy did not

9

state that enrolled students would remain obligated to pay full tuition if classes moved online after February 26, 2020. By its own terms, the Withdrawal and Refund Policy's deadlines applied only to students taking leaves of absence or withdrawing from BU, and thus, plaintiffs argue, they have no relevance to their refund claims. *See Chong v. Northeastern Univ.*, 2021 WL 1857341, at *3 n.3 (D. Mass. May 10, 2021) (finding a similar provision irrelevant because "none of the plaintiffs withdrew from Northeastern during the [s]pring semester of 2020"). Second, plaintiffs contend that BU's Bulletin Disclaimer does not act as a bar to their claims. The Disclaimer explicitly states that the Bulletin is not to be read as part of a contractual agreement, and thus, even if it identified in-person instruction as one of the "matter[s] in this Bulletin" that BU reserved the right to revise or revoke, the Disclaimer has no bearing on the *contractual* right to in-person instruction. A jury could find that the Withdrawal and Refund Policy and the Bulletin Disclaimer, singly or jointly, do not persuasively rebut plaintiffs' reasonable expectation of being offered in-person classes.

BU additionally argues that it met plaintiffs' reasonable expectations by providing high-quality remote instruction as a substitute for in-person instruction, and by spending their tuition money solely on academic

10

purposes. Both arguments miss the point. Whether remote classes were an adequate substitute for in-person instruction goes to the issue of damages, not breach; the question of whether a breach occurred is whether BU ceased offering in-person classes in violation of direct or indirect assurances to the contrary that it had given to the student plaintiffs. Similarly, BU's use of the students' tuition money for academic expenses would not absolve it of any promise to provide an in-person educational experience.[6]

BU also has not established that plaintiffs will be unable to prove damages. For the spring 2020 semester, BU offered full-time and part-time online curricula for certain of its graduate programs. The parties dispute whether BU charged less on a per-credit basis for online instruction than for in-person instruction, though BU notably admitted in discovery that it "charge[d] a lower tuition per credit for [] online-only courses . . . as

---

[6] The court is not unsympathetic to the quandary BU found itself in when the Governor for all practical purposes ordered it to suspend all in-person campus activity, including classroom teaching. The University can hardly be blamed for complying with a governmental order issued in the interest of public health that courts have subsequently (and uniformly) held to have been lawful. Under Massachusetts law, however, impossibility of performance and its companion doctrine, frustration of purpose, are affirmative defenses for the jury to decide. *See Mishara Constr. Co. v. Transit-Mixed Concrete Corp.*, 365 Mass. 122, 126 (1974). The court also notes that an impossibility defense only excuses performance, not repayment. *See Martorella v. Rapp*, 2021 WL 3234312, at *3 (Mass. App. Ct. July 30, 2021).

compared to courses that occur in-person." BU's Responses to Requests for Admission (Dkt # 97-5) at 9-10. This admission is probative of plaintiffs' contention that they received an education of lesser value than the one they might have reasonably expected when they paid tuition for the Spring 2020 semester. BU now argues that it in fact charged the same tuition for full-time students regardless of whether their classes were in-person or online. The admission "conclusively establishes" that BU charged less per-credit for online than for in-person instruction, and BU has not moved to amend or withdraw the admission. *See* Fed. R. Civ. P. 36(e); *see also Percella v. City of Bayonne*, 2022 WL 2207832, at *2 (3d Cir. June 21, 2022). While under the educational malpractice bar, plaintiffs may not attempt to calculate damages based on an alleged subjective difference in quality between an in-person and an online education, they may be able to prove damages by showing an actual difference between the amount BU charged for each type of coursework. *See In re Suffolk Univ. Covid Refund Litig.*, 2022 WL 2713732, at *2 (D. Mass. July 13, 2022).[7]

2. Breach of Contract — Fee Claims

BU also argues that it never contracted to provide on-campus services

---

[7] The fact that plaintiffs paid full tuition for remote classes for the fall 2020 semester is not dispositive at this stage where plaintiffs have also

in exchange for student payments of the Community Service Fee, the Student Services Fee, the Health and Wellness Fee, and the Sports Pass Fee. BU first raises the Withdrawal and Refund Policy's statement that students cannot obtain fee refunds once classes have begun. But, as previously noted, the policy only applies to students who withdraw from BU or take leaves of absence. BU also relies on its website's descriptions of the fees, which it contends do not create any reasonable expectation of in-person services. The court rejected this argument in deciding the earlier motion to dismiss. *See* Mem. & Order (Dkt # 63) at 8. Because there are genuine disputes of material fact as to whether BU breached its contractual obligations, whether express or implied, to the student plaintiffs, BU's motion for summary judgement on the breach of contract claims will be denied.

3. Unjust Enrichment

Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). Unjust enrichment, however, is a theory of equitable recovery, not a separate cause

---

elicited discovery suggesting that BU itself valued online education less than in-person education before the spring 2020 semester began.

of action. *See Lopes v. Commonwealth*, 442 Mass. 170, 179 (2004). Thus, "a party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Adequate does not mean successful; rather, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Id.* While in the early stages of pleading, a plaintiff may plead in the alternative as between law and equity, *see Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012), once the court determines that an adequate remedy at law is available to plaintiffs, the claim of unjust enrichment no longer lies, *see Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 210-211 (2019). As that determination has been made here on summary judgment, plaintiffs' unjust enrichment claim will be dismissed.

### B. Plaintiffs' Motion for Summary Judgment

A threshold issue to plaintiffs' cross-motion for summary judgment is the application of the one-way intervention rule, which provides that "the question of whether a class will be certified should be resolved before the merits of an action are decided." *Vander Luitgaren v. Sun Life Assurance Co. of Can.*, 966 F. Supp. 2d 59, 60 n.1 (D. Mass. 2012). The rule protects defendants from potential class members learning whether they have

prevailed on the merits before determining whether to opt in or out of the class, and is implicated when a plaintiff moves for summary judgment before moving for class certification. *See Charlessaint v. Persion Acceptance Corp.*, 110 F. Supp. 3d 303, 310 (D. Mass. 2015).

Plaintiffs argue that BU waived any argument that the one-way intervention rule applies when it assented to the court's scheduling order, which directed the parties to file dispositive motions before plaintiffs moved for class certification. In the event the court finds no waiver, plaintiffs agree with BU that the court should defer ruling on their motion.

The court agrees with BU that its assent to a briefing schedule fashioned and ordered by the court did not amount to a constructive waiver of the one-way intervention rule. *See Weir v. Joly*, 2011 WL 6043024, at *2 (D. Ore. Dec. 2, 2011). Accordingly, the one-way intervention rule applies, and the court will deny plaintiffs' motion for summary judgment without prejudice to its refiling after a decision has been made on class certification.

## ORDER

For the foregoing reasons, BU's motion for summary judgment is <u>ALLOWED</u> as to plaintiffs' unjust enrichment claim and <u>DENIED</u> as to plaintiffs' contract claims. Plaintiffs' motion for summary judgment is

15

<u>DENIED</u> without prejudice. Plaintiffs will file a motion for class certification within 30 days of the entry of this Order, with BU's opposition due 21 days thereafter.

        SO ORDERED.

        /s/ Richard G. Stearns_____
        UNITED STATES DISTRICT JUDGE