# United States Court of Appeals
## For the First Circuit

No. 23-1385

JULIA DUTRA, individually and on behalf of all others similarly
situated; GABRIELLA DUBE, individually and on behalf of all
others similarly situated; SHAKURA COX, individually and on
behalf of all others similarly situated; VALAAUINA SILULU,
individually and on behalf of all others similarly situated;
NATALIE SILULU, individually and on behalf of all others
similarly situated; OLIVIA BORNSTEIN, individually and on behalf
of all others similarly situated; VENUS TRAN, individually and
on behalf of all others similarly situated,

Plaintiffs, Appellants,

v.

TRUSTEES OF BOSTON UNIVERSITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Kathryn Lee Boyd, with whom Michael K. Eggenberger, Kristen
L. Nelson, Hecht Partners LLP, Blake G. Abbott, Eric M. Poulin,
Paul Doolittle, Roy T. Willey, Poulin Willey Anastopoulo, LLC,
Patrick F. Madden, E. Michelle Drake, Berger Montague PC, Daniel
J. Kurowski, Steve W. Berman, Whitney K. Siehl, Rachel A. Downey,
Hagens Berman Sobol Shapiro LLP, Harold L. Lichten, Lichten &
Liss-Riordan, P.C., Joseph I. Marchese, L. Timothy Fisher, Sarah

N. Westcot, Bursor & Fisher, P.A., Michael C. Forrest, and Forrest, LaMothe, Mazoe, McCullough, Yasi & Yasi, were on brief, for appellants.

Kathleen M. Sullivan, with whom Alex H. Loomis, Crystal Nix-Hines, Shon Morgan, Marina Lev, and Quinn Emanuel Urquhart & Sullivan, LLP, were on brief, for appellee.

———————————

March 13, 2024

———————————

GELPÍ, **Circuit Judge**.  This appeal requires us to analyze whether the Due Process Clause of the United States Constitution is violated by the retroactive application to this case of Section 80 ("Law 80"), signed into law on August 9, 2023, by Massachusetts Governor Maura Healey through the state's 2024 Fiscal Year budget.

This appeal arises out of breach of contract claims filed against Boston University ("BU") by Olivia Bornstein, Shakura Cox, Gabriella Dube, Julia Dutra, Natalie Silulu, and Venus Tran (collectively, "Plaintiffs") for the remote instruction they received during the Spring 2020 semester.  Plaintiffs alleged that BU committed a breach by transitioning to fully remote classes and services which they did not reasonably expect.  Plaintiffs also alleged that BU was unjustly enriched by the transition.

Lengthy discovery and motion practice ensued, then summary judgment was entered below in favor of BU on the merits. In re Bos. Univ. COVID-19 Refund Litig., No. 20-10827, 2023 WL 2838379 (D. Mass. Apr. 7, 2023).  Plaintiffs timely appealed, and soon thereafter, Law 80 was enacted.  Law 80 is material to the instant case because it bars actions for damages and equitable monetary relief against higher education institutions for acts or omissions in response to the emergency of COVID-19 and orders ceasing in-person gatherings during the Spring 2020 academic semester, subject to four provisions.  2023 Mass. Acts, ch. 28, § 80(b).  As its retroactive application does not violate due

process, Law 80 bars this action.  So holding, we affirm the district court's judgment below on this alternate ground.[1]

## I. BACKGROUND

### A. Relevant Facts

On March 10, 2020, during the height of the COVID-19 pandemic, former Massachusetts Governor Charlie Baker limited gatherings to no more than ten people within the state.  Weeks later, Governor Baker issued an order further limiting gatherings and requiring businesses that do not provide essential services to close their physical facilities in order to reduce the transmission of the virus.  In response, BU, like other higher education institutions, replaced in-person classes with remote instruction on March 16, 2020.  Providing fully remote instruction required BU to significantly improve its IT infrastructure and technical resources, resulting in BU incurring an additional $52 million in expenses for the Spring 2020 semester.  Alongside remote instruction, students were provided with remote access to tutors, counselors, health care, and other services that were previously provided on campus.

Plaintiffs were full-time students enrolled for in-person classes during the Spring 2020 semester.  For the Spring

---

[1] We are free to "affirm a judgment on a legal ground not relied upon in the district court." Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009) (citing Plymouth Sav. Bank v. IRS, 187 F.3d 203, 209-10 (1st Cir. 1999)).

2020 semester and before BU's compliance with the Governor's mandate, students had been provided with the option of registering for online or in-person courses. At that time, BU provided registrants with the times and locations of where the Spring 2020 on-campus classes would be held. Plaintiffs each paid tuition, and once BU transitioned to completely remote instruction, BU did not alter the costs of tuition, maintaining the same annual tuition rate as charged for in-person classes. Plaintiffs also paid BU certain mandatory fees for sports passes and other services such as health and wellness, community, and student services. Both the tuition and the fees went towards BU's general revenue to cover all expenses, including services and resources. After BU transitioned to fully remote learning, students continued their Spring 2020 semester with the same professors for the same classes and received academic credit as they would have had the instruction been in person. BU also continued to provide students with remote access to tutors, counselors, health care providers, and other services that were offered on campus.

## B. Legal Proceedings

On April 29, 2020, Plaintiffs filed suit against BU alleging that it had promised to provide in-person classes and services thereby committing a breach of contract when it did not do so (in compliance with the Governor's mandates) during the COVID-19 pandemic. In the alternative, Plaintiffs sought damages

for the unjust enrichment BU allegedly received for providing remote instruction in place of in-person classes. After extended discovery and a series of motions, Plaintiffs and BU filed cross-motions for summary judgment. Plaintiffs also moved for class certification and BU moved to exclude testimony from Plaintiffs' expert witness for damages under <u>Daubert</u>. <u>Daubert</u> v. <u>Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993). The district court granted BU's motions to exclude testimony and for summary judgment. <u>In re Bos. Univ. COVID-19 Refund Litig.</u>, 2023 WL 2838379, at *4.

The district court reasoned that BU was entitled to impossibility as a defense for the breach of contract claims because continued performance of the contract was illegal under the COVID-19 emergency orders. <u>Id.</u> at *3. As for the expert's testimony, the district court determined that the expert witness should be excluded subject to Federal Rule of Evidence 703 because the expert's analysis did not measure the type of damages claimed, resulting in a lack of genuine dispute of material fact as to restitution damages. <u>Id.</u> at *2-3. In entering judgment for BU, the district court denied Plaintiffs' motions for class certification and summary judgment as moot. <u>Id.</u> at *4.

Plaintiffs timely appealed arguing that the district court erred by excluding their expert witness's testimony, granting summary judgment for BU, and denying their motions for class certification and summary judgment. In response, BU defends

the district court's rulings based on this Court's holding as to unjust enrichment in Burt v. Board of Trustees of the University of Rhode Island, 84 F.4th 42, 58-59 (1st Cir. 2023), and alternatively, urges this Court to find that Law 80 bars this action. As to subsection 80(b), Plaintiffs counter that retroactive application of Law 80 to bar their case would violate the Due Process Clauses of the United States and Massachusetts Constitutions and the Contracts Clause of the United States Constitution.

## C. Law 80

Law 80 grants higher education institutions in Massachusetts immunity for monetary relief claims as specified by the text infra. Subsections 80(b) and (d) limit the scope of Law 80. Subsection 80(d) states that Law 80 is applicable "to claims commenced on or after March 10, 2020, for which a judgment has not become final before the effective date of this section and which were based on acts or omissions that occurred during the spring 2020 academic term." 2023 Mass. Acts, ch. 28, § 80(d). Subsection 80(b) states:

> (b) Notwithstanding any general or special law to the contrary, except as provided in subsection (c), an institution of higher education shall be immune from civil liability for any damages or equitable monetary relief alleged to have been sustained due to an act or omission of an institution of higher education if:

(i) the claim arises out of or in connection with tuition or fees paid to the institution of higher education for the spring academic term of 2020;

(ii) the claim alleges losses or damages arising from an act or omission by the institution of higher education during or in response to the COVID-19 emergency;

(iii) the alleged act or omission of the institution of higher education was reasonably related to protecting public health and safety interests in response to the COVID-19 emergency, in compliance with federal, state or local guidance, including, but not limited to: (A) transition to online or otherwise remote instruction; (B) pause or modification to instruction and ancillary student activities and services available through the institution of higher education; or (C) closure of, or modification to, operations of on-campus facilities of the institution of higher education; and

(iv) the institution of higher education offered online and otherwise remote learning options that allowed students to complete the coursework in the spring academic term of 2020.

Id. § 80(b).

## II. DISCUSSION

### A. Standard of Review

Because the retroactive application of Law 80 is a question of law, our review is de novo. Kenyon v. Cedeno-Rivera, 47 F.4th 12, 20 (1st Cir. 2022) (citing Hannon v. City of Newton, 744 F.3d 759, 765 (1st Cir. 2014)).  The parties do not dispute

- 8 -

that subsection 80(b) is intended to be retroactive.  Therefore, our analysis centers on whether this is constitutionally permissible.  Leibovich v. Antonellis, 574 N.E.2d 978, 984 (Mass. 1991).  Plaintiffs do not contend that BU does not satisfy subsection 80(b)'s four requirements or that BU has acted in bad faith.

## B. Law 80's Retroactivity

The legal analysis of whether retroactive statutes violate the Due Process Clause of the United States Constitution is that also followed as to the Massachusetts Constitution. Nantucket Conservation Found., Inc. v. Russell Mgmt., Inc., 402 N.E.2d 501, 503 (Mass. 1980); Am. Mfrs. Mut. Ins. Co. v. Comm'r of Ins., 372 N.E.2d 520, 525 (Mass. 1978) ("[T]hese various contentions 'amount to much the same thing.'" (citation omitted)). Hence, only a single analysis is needed.  Retroactive legislation must satisfy the due process test: "a legitimate legislative purpose furthered by rational means." Gen. Motors Corp. v. Romein, 503 U.S. 181, 191 (1992) (citing Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 730 (1984)); see also Landgraf v. USI Film Prods., 511 U.S. 244, 267-68 (1994) (stating that "[r]etroactivity provisions often serve entirely benign and legitimate purposes").[2]  As to any Contract Clause claim, "[w]e

_____

[2] Although we are not bound by the SJC's interpretation of the federal Due Process Clause, both parties brief the due process

need not deal with a constitutional prohibition against impairing the obligation of contracts, because the due process clause of the federal constitution provides essentially the same restraint so far as retrospectivity is concerned." Fornaris v. Ridge Tool Co., 423 F.2d 563, 566-67 (1st Cir. 1970), rev'd on other grounds, 400 U.S. 41 (1970). The burden rests on the challenger "to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976).

"A legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no 'conceivable grounds' which could support its validity." Leibovich, 574 N.E.2d at 984 (quoting Zeller v. Cantu, 478 N.E.2d 930, 934 (Mass. 1985)); see also E. Enters. v. Apfel, 524 U.S. 498, 524 (1998) (reaffirming the principle that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality" (quoting Usery, 428 U.S. at 15)); City of Boston v. Keene Corp., 547 N.E.2d 328, 331 (Mass. 1989); Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 525 (citing Mass. Port Auth. v. Treasurer

---

issue using the SJC's three-part test. We accordingly assume, without deciding, that this test reflects federal due process principles. See Vaello-Carmona v. Siemens Med. Sols. USA, Inc., 781 F.3d 1, 6 (1st Cir. 2015) ("assuming, without deciding, that a legal standard applies where 'both parties agree that the standard . . . was correct'" (quoting Ji v. Bose Corp., 626 F.3d 116, 129 (1st Cir. 2010))).

& Receiver Gen., 227 N.E.2d 902, 906-07 (Mass. 1967)).  "Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional."  Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 525; Usery, 428 U.S. at 14-20. "The equitable criteria as to reasonableness in this context [has] been established by the United States Supreme Court."  Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 526.  Our inquiry rests on "whether the statute falls within the legislative power to enact," Keene Corp., 547 N.E.2d at 331, even if the law may seem "unwise, improvident, or out of harmony with a particular school of thought," Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 488 (1955).

In evaluating the reasonableness of a retroactive statute, the parties agree that we should weigh three factors: (1) the nature of the public interest which explicitly or may have motivated the Legislature to enact the retroactive statute; (2) the nature of the rights affected retroactively and the reasonableness of any reliance expectations on those rights; and (3) the extent or scope of the statutory effect or impact, including whether the statute is appropriate and narrowly tailored.  Leibovich, 574 N.E.2d at 984; Bird Anderson v. BNY Mellon, N.A., 974 N.E.2d 21, 32 (Mass. 2012).  With these axioms in mind, we weigh subsection 80(b)'s retroactive application to this case under the three factors.

- 11 -

## 1. Nature of the Public Interest

Courts "defer to legislative judgment as to the necessity and reasonableness of a particular measure" which "is customary in reviewing economic and social regulation." U.S. Tr. Co. of N.Y. v. New Jersey, 431 U.S. 1, 22-23 (1977) (citing E. N.Y. Sav. Bank v. Hahn, 326 U.S. 230, 233 (1945)). We will find a statute valid and reasonable when the statute is intended to benefit the public rather than reduce the state's own contractual obligations. Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 527; U.S. Tr. Co., 431 U.S. at 23-25. We must also consider "whether [the public] interest[s are] reasonably served by the statute." Bird Anderson, 974 N.E.2d at 29 (citation omitted). The statute's public interests need not be explicitly stated. See Leibovich, 574 N.E.2d at 984 (upholding a retroactive statute where the Legislature "may have been motivated by at least three considerations of public interest" (emphasis added)). "That the Legislature might have, or arguably should have, come to different conclusions or followed a different course is not determinative." Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 527.

Plaintiffs argue foremost that subsection 80(b) serves no public interest, especially not public safety concerns, because Law 80 was enacted more than three years after the spring 2020 semester. Plaintiffs also contend that Law 80 is not a reasonable response to COVID-19 because Law 80 was enacted after the risks

associated with the pandemic had largely subsided.  We disagree with Plaintiffs, and in doing so, hold that there are several plausible and reasonable public interest motivations undergirding Law 80's enactment.

Subsection 80(b)(iii) states that immunity will extend to conduct "reasonably related to protecting public health and safety interests in response to the COVID-19 emergency, in compliance with federal, state or local guidance."  2023 Mass. Acts, ch. 28, § 80(b)(iii).  This language specifies that two public interests, to wit, protection of public health and safety interests and securing compliance with government health orders, motivate, at least in part, the Legislature's reasons for enacting this statute.  Subsection 80(b)(iii)'s language also makes clear that not all acts or omissions by higher education institutions are immune from liability; instead, the relevant conduct must be "reasonably related to . . . public health and safety interests" for the institution to be immune from civil liability.  Id.; see generally Thomas v. Baker, No. 21-1038, 2022 WL 18354179, at *1 (1st Cir. Aug. 1, 2022) (recognizing that "the COVID-19 pandemic has been taking a terrible toll in the United States over an extended period of time").  This is further evidenced by the exception to Law 80 that higher education institutions will not be immune from civil liability for "act[s] or omission[s] . . . that w[ere] malicious or in bad faith."  2023 Mass. Acts, ch. 28,

§ 80(c).    Accordingly,  the  language  in  subsection  80(b)
establishes  that  a  public  health  and  safety  motivation  in
connection  to  COVID-19  underlies  the  enactment  of  Law  80.

Next,  we  find  that  the  Legislature  could  have  concluded
that there exists a need to correct the disproportionate financial
impact  felt  by  higher  education  institutions  due  to  good  faith
compliance  with  COVID-19  emergency  orders.    See  Am. Mfrs. Mut.
Ins. Co.,  372 N.E.2d at 526, 528 (recognizing "that the concept of
reasonableness  is  supported  when  retroactive  legislation  is
enacted  to  cure  a  substantial  defect  which  could  not  easily  have
been  perceived  at  the  time  of . . . enactment").    BU,  like  other
universities  in  Massachusetts,  was  required  to  close  its
facilities  to  the  public  to  comply  with  Governor  Baker's  March 23
emergency  order.    Underlying  BU's  compliance  was  the  need  for
public  safety  and  the  reality  that  large  in-person  gatherings
throughout  Massachusetts  were  no  longer  an  option.    In re Bos.
Univ. COVID-19 Refund Litig.,  2023  WL  2838379,  at  *3.    The
Legislature  could  have  found  that  an  immunity  statute,  like  Law
80,  would  ensure  that  higher  education  institutions  would  not
hesitate  to  follow  prospective  emergency  public  health  orders
meant  to  protect  the  safety  of  students  and  others.    More  so,
securing  compliance  with  these  orders  was  likely  to  reduce  the
economic  and  other  strains  on  the  state  itself  as  it  coped  with  a
public  health  emergency.    The  Legislature  could  also  have

determined that litigation risks and costs accompanying past universities' compliance could deter them from future compliance. And although the COVID-19 public health emergency officially ended in Massachusetts on May 11, 2023, the Legislature could have found that the negative financial effects that higher education institutions experienced during the Spring 2020 semester were ongoing. Cf. Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark, 310 U.S. 32, 39 (1940) ("The emergency of the depression may have caused the 1932 legislation, but the weakness in the financial system brought to light by that emergency remains.").

Supporting these motivations for Law 80's enactment are the existence of various lawsuits, such as this one, in which students allege a breach of contract and demand tuition refunds or other monetary relief for substitute online instruction when universities had no practical or legal choice but to continue the Spring 2020 semester online in compliance with Governor's Baker emergency order. See, e.g., Rodrigues v. Bos. Coll., No. 20-CV-11662, 2024 WL 100912 (D. Mass. Jan. 8, 2024); Omori v. Brandeis Univ., No. 20-11021, 2024 WL 150250 (D. Mass. Jan. 11, 2024); In re Suffolk Univ. Covid Refund Litig., 616 F. Supp. 3d 115 (D. Mass. 2022); Chong v. Northeastern Univ., 494 F. Supp. 3d 24 (D. Mass. 2020). "The need for retroactivity, and the reasonableness of the legislative response, become most apparent when the plaintiff claims a vested right arising out of the very

transaction which motivated the Legislature to act." Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 527. This case provides an example as to why the Legislature could have "necessitated a legislative remedy" to address potential civil liability for higher education institutions arising from the Spring 2020 semester transition to online instruction. Id. The Legislature is well aware that Massachusetts is home to a number of colleges and universities, and they are vital to the state's economy.

In these circumstances, we conclude that subsection 80(b) serves reasonable and plausible public interests related to public health, safety, future compliance, and economic consequences beyond the control of the universities. Compare, e.g., id. at 526-27 (holding a statute constitutionally retroactive in part because of the "urgent reasons, of emergency proportions, for immediate correction" to the broad impact of higher insurance rates causing "financial crisis to thousands"), with Bird Anderson, 974 N.E.2d at 29 (holding a statute unconstitutionally retroactive in part because the public interest -- equal treatment of adopted and biological descendants -- would disrupt "the planning of multiple generations of a family" where there was no evidence of an emergency or "that the position of adopted children [had] changed dramatically" to support the newly enacted amendment).

### 2. Nature of the Rights Affected Retroactively

"Essentially, the question is . . . how great is the change viewed in the light of the reasonable expectations of the parties when the contract was entered into." Am. Mfrs. Mut. Ins. Co., 372 N.E.2d at 527 (alteration in original) (quoting Fornaris, 423 F.2d at 567). "Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." Landgraf, 511 U.S. at 273.

"Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." U.S. Tr. Co., 431 U.S. at 22 (citing Hudson Water Co. v. McCarter, 209 U.S. 349, 445-47 (1908)). "[N]ot every law that upsets expectations is invalid; courts have generally compared the public interest in the retroactive rule with the private interests that are overturned by it." Adams Nursing Home of Williamstown, Inc. v. Mathews, 548 F.2d 1077, 1080 (1st Cir. 1977). These expectations are to be reconciled with States' ability "to safeguard the welfare of their citizens." U.S. Tr. Co., 431 U.S. at 21.

Plaintiffs assert that retroactive application of subsection 80(b) impairs their vested implied contractual rights for which they would have been able to recover before Law 80's

enactment and that they would have acted differently had they known Law 80 would be enacted.  See Carleton v. Town of Framingham, 640 N.E.2d 452, 458 (Mass. 1994).  BU responds that, at most, subsection 80(b) affects only not previously recognized "implied" rather than express contract rights and that this Court's decision in Burt makes clear that no express contractual rights are at issue.  Further, BU argues that Plaintiffs cannot show that (a) they acted in reasonable reliance on the prior state of law and (b) that they would have acted differently had they known Law 80 would be enacted.

Plaintiffs rely, in turn, on two cases which do not aid them: Campbell v. Boston Housing Authority, 823 N.E.2d 363 (Mass. 2005), where retroactive application substantially impaired contractual obligations, and Bird Anderson, 974 N.E.2d 21, where vested interests rendered the statute unconstitutionally retroactive.[3]

---

[3] Plaintiffs also cite three cases which invalidated Florida's immunity statute similar to Law 80.  See Feretti v. Nova Se. Univ., Inc., 586 F. Supp. 3d 1260 (S.D. Fla. 2022); Fiore v. Univ. of Tampa, 568 F. Supp. 3d 350 (S.D.N.Y. 2021); Rhodes v. Embry-Riddle Aeronautical Univ., Inc., No. 6:20-cv-927, 2022 WL 18492541 (M.D. Fla. Nov. 23, 2022).  In each of these cases, the district courts applied Florida law, which recognizes a "vested rights" approach for accrued cause of actions, to strike down Florida's immunity statute because it impaired vested contractual rights.  Feretti, 586 F. Supp. 3d at 1269-71; Fiore, 568 F. Supp. 3d at 359-65; Rhodes, 2022 WL 18492541, at *3-4.  By contrast here, Plaintiffs have, at most, an equitable claim for unjust enrichment because the doctrine of impossibility rendered the contracts

Bird Anderson and Campbell are easily distinguishable from this case. Campbell involved statutory amendments that insulated solely public employers from "liability resulting from the general failure to conduct" necessary health inspections. 823 N.E.2d at 368-69. The statute's apparent direct motivation was to benefit the state as employer, which differentiates Campbell from the instant case. When a "State's self-interest is at stake," we will apply less "deference to a legislative assessment of reasonableness and necessity." U.S. Tr. Co., 431 U.S. at 26. But that is not the situation here. Subsection 80(a) defines institutions of higher education to include public and nonpublic institutions, encompassing all postsecondary institutions that satisfy subsection 80(b)'s criteria. 2023 Mass. Acts, ch. 28, § 80(a)-(b). Hence, we do not find the sole State as employer self interest that was conspicuous in Campbell to be present here. Moreover, the contractual rights substantially impaired in Campbell differ from Plaintiffs' alleged implied contract rights as we explain infra. For these reasons, Plaintiffs' reliance on Campbell is unpersuasive.

The affected vested property right interests in Bird Anderson likewise differ from the alleged implied contract interests that Plaintiffs assert. The substantive vested

---

unenforceable. See Burt, 84 F.4th at 57-58. As Florida law does not apply here, we see no need to further address these cases.

interests in Bird Anderson derived from irrevocable testamentary
instruments, and the amended statute, if it were to be held
constitutionally retroactive, would have substantially altered and
affected the "dispositional choices of testators, settlors, and
grantors." 974 N.E.2d at 28; see also Adams Nursing Home, 548
F.2d at 1080 (noting that retrospective legislation tends to be
unconstitutional when "vested property rights" are overturned).
That practical effect combined with the weak underlying public
interest and infinite duration of the statute resulted in
unconstitutional retroactivity. Bird Anderson, 974 N.E.2d at 29,
32. By contrast, the underlying public interest here is stronger,
and the alleged implied contract interests here are, at most
implied, not express, contractual rights. "[I]t is basic that the
State reserves police powers that may in particular predicaments
enable it to alter or abrogate even conventional contractual
rights." Op. of the Justs., 303 N.E.2d 320, 329 (Mass. 1973).
"As with laws impairing the obligations of private contracts, an
impairment may be constitutional if it is reasonable and necessary
to serve an important public purpose." U.S. Tr. Co., 431 U.S. at
25; see S. Terminal Corp. v. EPA, 504 F.2d 646, 680 (1st Cir.
1974). Instead of focusing on a "conclusory label" as to the
Plaintiffs' alleged vested rights, we direct our focus to the
Plaintiffs' actual and reasonable expectations. See Adams Nursing
Home, 548 F.2d at 1081.

Plaintiffs argue that they reasonably expected BU to perform its obligations of providing services that were expected and paid for -- claiming that on-campus classes and services were expected, not remote instruction. Even accepting Plaintiffs' arguments that they expected on-campus classes and services when they registered and began their Spring 2020 semester before the pandemic hit, they ignore key later events. Given that Governor Baker had ordered practically all large in-person gatherings -- which unquestionably includes university campuses -- to cease, Plaintiffs could not reasonably continue to have such expectations in light of the state mandated emergency measures. As this Court held in Burt, the affirmative defenses of impossibility and frustration of purpose resulting from compliance with the Governor's orders meant Plaintiffs no longer had any reasonable reliance on the performance of illegal contracts.[4] See Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 439-40 (1934) ("And, if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood, or earthquake, that power

---

[4] Even assuming Plaintiffs' never-before-recognized implied contract claim would have left open a possible restitution claim, any such claims are defeated because BU gave considerable value in exchange for its online programs and other services. See SEC v. Sanchez-Diaz, 88 F.4th 81, 90 (1st Cir. 2023).

- 21 -

cannot be said to be nonexistent when the urgent public need demanding such relief is produced by other and economic causes.").

### 3. Extent of Law 80 and Balancing of Competing Interests

Finally, we address whether the extent of the impact is not excessive. See Carleton, 640 N.E.2d at 458. We weigh the "duration of the burden imposed by the retroactive statute and 'whether the scope of the statute is narrowly drawn to treat the problem perceived by the legislature.'" Sliney v. Previte, 41 N.E.3d 732, 741 (Mass. 2015) (citation omitted); Leibovich, 574 N.E.2d at 986.

Law 80's application is limited in time. Subsection 80(d) limits subsection 80(b)'s immunity to "claims commenced on or after March 10, 2020, for which a judgment has not become final before the effective date of this section." 2023 Mass. Acts, ch. 28, § 80(d). And its application is confined to suits that commence within the specified time frame, "which were based on acts or omissions that occurred during the spring 2020 academic term." Id. Therefore, we find that the plain language of subsection 80(d) narrows subsection 80(b)'s retroactive application to further the Legislature's plausible and reasonable public interests. Blaisdell, 290 U.S. at 447 ("It is limited to the exigency which called it forth."). Subsection 80(b)'s scope is not excessive but necessarily constrained to suits arising from the Spring 2020 semester. Moreover, subsection 80(c) makes clear

that Law 80 provides no immunity to higher education institutions for malicious or bad faith conduct.  <u>Id.</u> § 80(c).

Thus, because a balancing of all three factors weighs in favor of retroactive application of Law 80 to this case, we find that Law 80 does not violate due process.

### III. CONCLUSION

For the foregoing reasons, we **<u>affirm</u>** the district court's grant of summary judgment in favor of BU.[5]

---

[5] Given that subsection 80(b)'s constitutional retroactivity applies here, we thus see no need to reach the merits of the <u>Daubert</u> ruling below.